[No. 24069. Department Two. January 5, 1933.]

GEORGE R. HARADER et al., Appellants, v. MARY E. BROWN et al., Respondents.[1]

*Browder Brown (Harry H. Johnston,* of counsel), for appellants.

*Boyle & Boyle,* for respondents Healy Bros., Inc., *et al.*

*Fitch & Arnston* and *B. F. Jacobs,* for respondent Brown.

[1] Reported in 17 P. (2d) 849.

TOLMAN, C. J.—Appellants, as plaintiffs, brought this action to procure the cancellation of a contract for the purchase of real estate, and to recover damages, based upon alleged fraud and misrepresentation on the part of the defendant Brown, as owner, and the remaining defendants, as agents for the owner, in procuring the execution of the contract under consideration. The answers denied the fraud, and by cross-complaint defendant Brown sought the forfeiture of the contract for failure to make payments as stipulated, and prayed that title to the land be quieted in her. A trial on the merits to the court resulted in findings and conclusions favorable to the defendants and a judgment followed denying plaintiffs any relief and granting the prayer of the cross-complaint. The plaintiffs have appealed.

The law governing fraud and misrepresentation is well settled in this state upon almost every conceivable feature, and we find nothing in the record now before us but questions of fact which, when determined, call for the application of familiar rules. Hence, we have devoted our attention diligently to the evidence in the case, and after full and careful consideration, we are convinced that the evidence well supports the findings of the trial court, which findings, so far as material, may be summarized as follows:

Shortly prior to the time the negotiations began which culminated in the execution of the contract, respondent Mary E. Brown and her then husband, John W. Brown, had listed the property with respondent Healy Bros., Inc., a corporation engaged in the real estate business, for sale, and had authorized Healy Bros. to find a purchaser according to certain specified terms. It may be that the evidence would have justified a broader finding here to the effect that Healy Bros. were authorized not only to find a purchaser but

to make a sale, but facts subsequently found make this immaterial.

Respondent Brown and her husband, while they had owned the land for some years, were not farmers. While they had it, it had been occupied by tenants, and it is not shown that the Browns or either of them made any misrepresentations as to the character, quality or condition of the land either to appellants or to Healy Bros. The property in question was an irrigated farm under the Yakima-Sunnyside irrigation project, which irrigation project had been constructed under a twenty-year-payment plan, and five of these annual payments not yet due had not been made at the time the contract was entered into, and were in fact a lien on the land, which lien was not disclosed at the time; but thereafter respondent Brown credited the appellants on the contract with the amount of these installments which they paid, and offered in open court to herself pay all that remained unpaid and give to appellants a clear and unincumbered title if and when they should perform.

The appellants had some little knowledge of farm lands and the nature of alkali land, but we think no very practical knowledge, and the trial court would not have been far wrong if he had held them to have been inexperienced in such matters. The fact is that, when their attention was first called to this land by newspaper advertisement signed "Healy Bros., Inc.," they read a statement therein, "Absolutely free from alkali," and probably when they approached Healy Bros. for further information, they were told much the same thing, and undoubtedly this information was false, though probably not known to be false by Healy Bros.

But whether so or not, appellants were told at the time that they should investigate for themselves, ex-

amine the land and make their own inquiries and not buy "a pig in a poke." The appellant husband, before making the contract, did go to the land and make such personal examination as he cared to make, and had full time and opportunity to make an examination and to prosecute inquiries which would have revealed to him fully the exact nature of the land with reference to its containing alkali. The husband in his testimony undertakes to state some facts excusing him from making a full investigation, but the so-called excusatory facts are by no means convincing or sufficient; and we have here the case of a man, somewhat inexperienced, it is true, but in full possession of all of his faculties, who was warned to make his own investigation, who did so, who had every opportunity to make that investigation thorough and complete, and who, if he failed in that respect, is in no position to shift the burden of his own fault to another.

After such investigation and such opportunity, the contract was made, and we think it can not now be said that it was made in reliance upon the representations of the agents. That appellants did not rely upon the representations of the agents, is further demonstrated by the fact that, although the contract was made in March, 1929, it was not until the late summer or fall of 1931, when they had made a failure in farming the land, when their means were exhausted and they were unable to meet installments due and falling due on the contract, that they voiced any dissatisfaction.

True, a portion of this time the land was farmed by tenants, but in the season of 1931 it was farmed by the appellant husband, and he must have well known all about the land and the characteristics of which he now complains, long before he made complaint. The whole record tends to support the trial court's con-

clusion that there was no thought of making complaint until appellants found themselves financially embarrassed, unable to meet their payments and likely to lose the land; and that then, and only then, was born the idea that they had been defrauded.

In all essential particulars, the evidence well supports the trial court's findings, and in no controlling matter does it preponderate against such findings; and therefore, under our familiar rule, the judgment appealed from must be, and it is, affirmed.

MAIN, BEALS, and STEINERT, JJ., concur.